Case number 174223, Michele Rafferty et al. v. Trumbull County, Ohio et al. May it please the court. My name is Angelica Jarmus, and I am one of the attorneys representing Mr. Charles Drennan in this interlocutory appeal. As a preliminary matter, I'll be reserving three minutes of my time for rebuttal. All right. Your Honors, this court should reverse the denial of qualified immunity to Mr. Drennan on the Eighth Amendment claim made by Ms. Sherman for three primary reasons. First, the state of the case law is at best undeveloped on the question of whether an officer's words that prompt an inmate to touch herself in a sexual manner equates to unconstitutional touching by that officer. But even if this court is not convinced that the case law is not clearly established, this court need only look to its prior holdings, concluding that harassment or verbal abuse does not rise to the level of an Eighth Amendment violation. Third, if this... What if the verbal abuse involves a requirement that there be some physical action, or even in this case, touching on the part of the individual? Yes, Your Honor. If this court finds that words inducing an inmate to touch herself equates to contact by that officer, this court still should not find an Eighth Amendment violation. This court has previously found more egregious conduct to not rise to the level of cruel and unusual punishment under the Eighth Amendment. There's been several cases where there's been direct personal contact by an officer to an inmate that was found not to equate to an Eighth Amendment violation. Why does there have to be touching? What if you have a jail? It's not unusual to have jails that have mezzanines and there are railings, and I'm using this as perhaps an imperfect analogy, but a jailer tells an inmate to jump over the railing, falls to the floor below, dies, or gets hurt. Would you say that was a constitutional violation? No, Your Honor. There's been... Really? That wouldn't be a constitutional violation because you didn't physically touch them? Your Honor, the situation that you just posed, again, involves words, perhaps threats or some form of assault. And this court has previously found that those words or threats do not rise to the level of an Eighth Amendment violation. So if a guard was to walk up to a prisoner and smack them in the face, that could, under the right circumstances, be a constitutional violation, right? Correct. There have been... So if the guard, instead of doing it himself, orders another prisoner to walk up to that same prisoner and smack them in the face, you're saying that's not a constitutional violation? We're putting aside whether it's clearly established for a minute. We'll get to that. Why would there be a difference in those two examples? There may... Well, the difference would be the direct action of a corrections officer versus somebody else. But I think that both of those scenarios are actually the same in that your question almost implies the power dynamics that I believe Judge Pearson raised in her district court opinion. And those power dynamics, or at least according to Judge Pearson and Ms. Sherman, is that based on the levels of power, almost anything that comes from an officer's words is a direct order. However, there's no case law from this circuit holding as much. Judge Pearson relied on a Ninth Circuit court case, Wood v. Buclair, as well as a district of Massachusetts case to talk about... I didn't ask you if there was a case. That's clearly established. I asked you why would there be a difference from a constitutional standpoint, whether you hit somebody yourself or you order somebody else to hit them for you. And obviously, there's power involved. That's why the prisoner obeys the command. So why should there be a constitutional difference? Because your whole premise here is there was no touching. So therefore, no harm, no foul. And I don't understand that. Your Honor, I think that even... And I apologize for not necessarily giving you a very direct answer to your question, but our position doesn't rest solely on the fact that there's an absence of touching. Even if this Court finds that due to the verbal exchange that took place and Ms. Sherman's reaction to those words, even if this Court finds that Mr. Drennan essentially made physical contact with the inmate, there are prior cases within this circuit from this Court as well as both the Northern and Southern District that recognize sexually suggestive comments or sexually degrading comments, even with paired with direct physical contact by an officer, still do not automatically violate the Eighth Amendment. And there's been several cases where there's been more egregious conduct in that the officer had direct contact with an inmate. And this Court found that it may be unpleasant, it may be unsettling to us, but it does not meet that very high burden of cruel and unusual punishment. Are most of the cases that you refer to factually distinguishable in that they weren't as pervasive and the misconduct wasn't as repetitive as we have here? And in addition, the facts were actually not exactly the same? I would agree, Your Honor, that the facts are not identical here. I would respectfully disagree that the conduct in question was more pervasive or severe. That depends upon how repetitive the conduct is and also how invasive and coercive the result of the command or the statement by the correctional officer might be and what it requires the inmate to do. Yes, Your Honor. This Court's case law says that isolated incidents of sexual contact by a guard, brief instances of sexual contact by a guard, or insufficiently severe instances of sexual conduct do not rise to the level of an Eighth Amendment violation. These weren't brief and they weren't incidental. It was six different occasions. If you accord the complaint what we have to accord it. So what is your best case from the Sixth Circuit where you say we have found more egregious conduct to not be a violation of the Eighth Amendment? Your Honor, in a 2013 case, Raglan v. City of St. Louis, this Court affirmed summary judgment in favor of officers who had touched an inmate's genital area in a sexual manner and used sexually degrading language and on multiple occasions paired that verbal harassment with direct contact with the inmate's genitals. And this Court said that the District Court didn't err in granting... All you cite Raglan for is the concept that the guard touched the prisoner's genital area presumably once. And this Court had... Do I understand that correctly? The physical contact may have been on one occasion. There's also... So why is it more egregious that the guard touched the prisoner's genital area once, if that's really what happened, versus ordering, in this case, this woman inmate to do things to herself on six different occasions? Why is Raglan more egregious? I don't get that. As the record establishes, on one or two occasions, Ms. Sherman actually masturbated and touched herself. On three or four occasions, she exposed her naked breasts pursuant to alleged request by Mr. Drennan. Okay, so that's six, right? Correct, Your Honor. How is Raglan more egregious? Is it what the guard did on the one occasion that's more egregious? Or is it the... So is it the nature of the act? Is it the number of acts? Your Honor, I would say that it was the nature of the acts that direct personal contact by an officer with the inmate's genitals. This Court, semi-recently in 2017, in Hersey v. Anderson, noted that sexually suggestive comments, even when coupled with isolated incidents of touching, do not rise to the level of a constitutional violation. Now, in that case, I will concede that the Court wasn't addressed with actual physical contact by the guard. However, this Court went so far as to say that incidents of touching, and that's a plural, now there wasn't a bright line number, but more than one incident of sexually explicit language, does not rise to the level of an Eighth Amendment violation. There's also an Eleventh Circuit case that Ms. Sherman cited in her opposition to Mr. Drennan's motion for summary judgment, but did not continue citing in her appellee brief in this appeal. But that case is Boxer v. Harris, and it's a 2006 case out of the Eleventh Circuit, where prisoners' manual masturbation, even under the threat of reprisal, did not violate the Eighth Amendment. And in this case, we do not have a direct threat from Mr. Drennan. The record establishes the district court's order... Well, wasn't the victim here, if we can call her that, something like 18 or 19 years old? Your Honor, Ms. Sherman was 20 years old at the time of the alleged events, yes. Okay. And Ms. Sherman's deposition testimony states that she was never directly threatened and she was never bribed by Mr. Drennan to do these acts pursuant to his alleged... Are we sort of mincing words here? Let's assume for a second that she wasn't directly threatened in the sense that the guard said, if you don't do X, I'll do Y. That's a threat. Why is that different than the guard telling her to do X and leaving off what the consequences will be if she doesn't, which seems to me in a jail setting are sort of implicit. Your Honor, I think that it's important, given the attention other courts have given to whether or not threats were made, whether or not bribery has been made in related cases. Unfortunately, there's not a controlling authority that directly applies to the facts that were given. So we're looking to unpublished cases from this circuit or cases from other circuits. And in those cases that involve sexually explicit conduct by an officer, those courts always, in their opinions, mention the existence or absence of a threat or explain, you know, whether or not there's been bribery, which in this case there was neither of those. Do you agree that an inmate, an incarcerated inmate, cannot consent to sexual activity in a jail setting and dealing with a correctional officer? Would your client at least admit to that? Judge Clay, I see that... Yeah, you can answer. I would not give a blanket concession to that based purely on this Court's Halvey-Bevin case in which consent was recognized between an inmate and an officer for a relationship involving sexual intercourse. But here there was no relationship, so this is quite a bit different. So for... I'm sorry, are you asking whether or not there was consent given this specific factual scenario? Whether the... I'm asking you whether you would concede that the prisoner cannot provide consent in an inherently coercive environment of... as an incarcerated prisoner. And I believe there's case law to that effect. I'm just trying to find out what your position is on it. My position is that whether or not Ms. Sherman consented to these verbal requests or Mr. Drennan perhaps forcing himself on Ms. Sherman is inconsequential. I don't... Okay, but that wasn't the question. Do you concede that incarcerated prisoners are not in a position to provide consent, the environment being inherently coercive? Your Honor, I will not make that blanket concession that the inmates... All right. You'll have your rebuttal time. Thank you. Good afternoon. Good afternoon, Your Honors. My name is Sarah Thomas-Coover, excuse my voice. I represent Michelle Rafferty and Katie Sherman. Ms. Sherman was, in fact, a teenager, 19 years old, and in the Trumbull County Jail trustee pod with her bunkmate, Michelle Rafferty, who was in her late 20s. Mr. Drennan is two and a half times Ms. Sherman's age. He's larger in size, with Ms. Sherman being five foot three and 115 pounds. He's also in uniform, armed, handcuffed and badged while he's doing his rounds in the midnight shift. I don't think you're going to find he's armed. They're not armed in jail. With sticks or at times. I'm not talking about guns, Your Honor. Anyway, he is supposed to be just doing a body check. It's your obligation to establish that the officer doesn't get qualified immunity once they've pleaded. Do you agree with that? You have to come forward to say they don't. So I'd like you to assume for a second that this is a constitutional violation, along the lines of the conversation that we had with your opposing counsel. What's your best case that shows that that constitutional violation was clearly established at the time? I believe the Sixth Circuit case of 1987, Kent v. Johnson, Your Honor. Kent? Yes. Where you had a female corrections officer basically voyeuring, leering at a male inmate in the shower and bathroom and was violating his right of privacy. You don't cite Kent in your brief. The amicus briefs do, Your Honor, from the Cato Institute and from... So it's sort of curious that you don't even cite what you think is the best case. Why is that? I apologize, Your Honor. I'm not an appellate attorney. I was the trial attorney in this case. I was doing the best I could, and I received a lot of case law and support both from the... What's the best case you think of the ones you did cite? I can't say it off the record, Your Honor. I believe it's just the line of Molyneux cases from the U.S. Supreme Court that show that there is an eight-amendment violation if there's clearly established... Well, you know, it's sort of a practical question, then, where we construct this artificial environment and we impose obligations on police officers for obvious reasons. But if lawyers can't point to the case that says that you can't do that or even the case that establishes a general principle, then how can we expect police officers to do that? Can I respond, Your Honor? In this case, I mean, we don't have to cite a particular case like the appellant's state that is similar factually. It is clearly established by federal and state regulations towards prisons in the training that corrections officers get in the criminal law regarding sexual battery, Section 2907, that a prison guard cannot request an inmate to do sexual favors for him. And this was much more than sexual favors. This was asking her to masturbate, to expose herself. And this was not just six incidents. It was also they are sleeping. They are unaware when he's coming in, when he's on shift, when he's going to be tapping his fingers on her window and asking her to do things. So every night she's there. She's wondering whether he's going to be asking her, actually demanding her because I don't believe a corrections officer can just ask without it being a demand because she is in a prison environment. There's threats of retaliation. I think what you're making is you're making a Hope v. Pelzer argument that basically says you don't have to have a case exactly on point to give fair notice to somebody that you can't do what they did. But you don't make a Hope v. Pelzer argument in your brief. To me it's clear that every corrections officer should know that you cannot sexually abuse an inmate. I mean, it's criminal. And it's totally improper in the setting, in a penological setting, where you're supposed to be protecting, monitoring and controlling the inmate. Instead you're abusing the inmate. And you're using your position and power and authority to do that. I understand the Supreme Court tells us that we can't set these rights at a high level to provide the requisite notice. Where that line is is the trick here, of course. So I'm just trying to find out what case you rely upon that sets that line. I rely on the Constitution, on the Eighth Amendment, that somebody should not be subject to cruel and unusual punishment. And the case law that follows that. Is there a single case involving qualified immunity that you're aware of that's ever succeeded by simply citing an amendment? This is such a clear situation because there's no corrections officer. If you go and talk to 100 people on the street, they're not going to say this is correct. Most people would say this is totally inappropriate, if not illegal. So the idea that a corrections officer who goes through training, PREA training, and this particular officer was a former police officer, does not have noticed that asking or demanding sexual shows at night in the prison or in the jail facility is improper, is to me totally unimaginable. There's no way that a trained, like Mr. Drennan, who was trained for three years, who worked as a corrections officer for so many years, who was a police officer, could not have noticed that this was not only totally improper and unconstitutional, but possibly criminal. So your argument is it's obvious? It is obvious. And there's plenty of statutes. That's what you want to fall back on? Is this an argument that you're making along the lines of the argument that we hear sometimes that the proper interpretation of the Eighth Amendment depends upon evolving notions of decency in a civilized society so that occasionally we might have a case that's so egregious in the nature of it that it obviously offends the Eighth Amendment? Absolutely, Your Honor. I mean, there was an example... If it involves the evolving standards of decency, which is a slippery slope in my opinion to start with, but ignoring that, evolving standards means it was okay at one point and it's not okay now. So at what point did the law then evolve to put somebody on notice that what the good old boys used to do is no longer appropriate? Well, at this point, there's criminal law against corrections officers ordering inmates to engage in sex. So the criminal law has... There's a criminal law that says you can't ask a woman inmate to expose herself to you if you're a jailer? You can't engage in sexual conduct. It's sexual batting up, Your Honor. I asked you a specific question. Is there a criminal law that criminalizes directing somebody to expose their breasts? That would be not conduct, but it would be contact, and it could be considered criminal depending on the specific facts of the case. A minute ago, you said it was illegal. Now you're saying, well, maybe it could be. But even if it could be, are there cases that say that something that is criminal conduct then constitutes a constitutional tort under the Eighth Amendment? I'm just not familiar with any... I'm not saying that that's wrong. I just don't remember ever reading a case that says that. In other words, we don't determine what a constitutional violation is under the laws and regulations. That's not what informs us what the Constitution requires. I understand, but you were asking about standards of decency. And if the legislature, who are the representatives of the people, are going and creating laws that suggest that sexual conduct by a corrections officer to an inmate because of the power differential that the inmate cannot consent and is similar to a coach and a juvenile or a doctor and a patient that it is considered a felony in the state, sexual battery, I'm stating that obviously our standards of today will not... This is not like an excessive force... Okay. So the answer to my question is we would look to when the state adopted a criminal law. That's your fighting line? That's one. But I believe the mores of today is that you cannot have... It's not just inappropriate, it's illegal for a corrections officer, and he has plenty of notice of that, to use his power, his power not only to control the inmate, but to threaten the inmate, to make sure that her stay... This is the reality of the prison system. Do any of the cases that you or the MECI site address whether the underlying conduct is or is not illegal? The amicus briefs cite several cases that show that the statutes, like here, and the Molina case, whether the violent nature of the conduct at issue is clearly established. In cases where the defendant alleged a violation of plaintiff's constitutional rights or rights from the defendant's attempt to carry otherwise lawful duties, for example, a police officer making a snap decision on how much force is necessary in making a lawful arrest qualified and giving ample room for mistaken judgments. Here, because of the specific facts in this case, it may require that the law is clearly established. Here what I'm saying is it's so obvious, like Judge Clay said, that the most egregious cases don't often go to litigation. You have the amicus briefs cite an example of forcing foster children into slavery. Well, no one is going to say that that is not illegal, but there's no clear, there's no case law on it, there's no... Is the case law you cited from the amicus brief, is that, I didn't understand what you said, is it Merino? It would be Mullenix? Supreme Court case, Your Honor? Mullenix? M-U-L-L-E-N-I-X. Okay, thank you. Here in Hope and Sims v. Labowitz, there's also conduct which is inherently cruel, unnecessary and otherwise unlawful, and those factors themselves may suffice to give defendants notice that they will be held liable. Here, Mr. Drennan is using the concept of qualified immunity, which should only be used in situations where someone is trying to do their job in it and is being protected by the immunity clause from harassment from people. This is just the opposite of that. Here is a person in a position of power, abusing it and harassing inmates, and the reality of the prison system is that there's not much that they can do about it. She did feel intimidated by him. There was no consent. Can I go back to Mullenix? I'm really curious about why you're relying upon that, because it simply says the dispositive question is whether the violative nature of the conduct is clearly established. You can't say something is clearly established because it's clearly established. But that's the problem with the circular nature of the case law. My point is you don't cite that case. It's cited in the amici, and it doesn't have any – there's no facts that are at least recited in this recitation in the brief that address itself to the facts in this case. All we're trying to figure out is adequate notice. Right. And I don't think I have to provide an exact case in point that sets a precedent here. Here it is so obvious that this sort of conduct is improper, unlawful, and potentially criminal that it would give any, not only corrections officer, but any person on the street notice that this sort of conduct is improper. And that's why I'm saying that the idea of what is clearly established – And all I'm trying – I'm trying to help you out here by suggesting to you that the Supreme Court case law says we look for a case that is close enough. And that's why I'm trying to give you the opportunity to tell us what that case is. And none of the ones that you've been reciting either say what you say they say or are even in your brief. I'm just going to incorporate by reference the cases that are cited in both the amicus briefs. Because to me, my background is as a felony prosecutor. I did sex assault cases and child assault cases. I cannot imagine that this in today's society or in any society is proper behavior. Nobody is suggesting this is a good idea. Nobody is suggesting this is proper. Nobody is coming to the defense of this officer and what he did. The question is, is it a constitutional tort? And that's our responsibility to determine. And I believe under the Eighth Amendment is because these inmates are sitting there in their jail cell doing their time. And in that period of time for months, they're concerned about whether this officer is going to go knock on their door, knock on the window, and ask and demand that they expose themselves and they perform. And they may not be able to see him because it's dark, but they can definitely hear him. They can hear his responses. And this is something that they had to deal with, which is not part of what their sentence should entail. And I believe it is cool and unusual under the Eighth Amendment. Thank you very much. And we'll hear rebuttal. Thank you, Your Honors. Three very brief points. As Judge McKeague said, the question before this Court is not whether the conduct violated state statute or common law or even whether the conduct is immorally wrong. The question is whether this alleged conduct reached the level of an Eighth Amendment violation. I'll note that the Kent v. Johnson case that opposing counsel cited was from this circuit. However, that case, this Court never reached the merits of the Eighth Amendment. The Court reviewed... But the Court determined it had stated a claim under the Eighth Amendment, and there was no allegation of touching in that case, was there? You are correct, Your Honor. So doesn't that take away your argument here that there needs to be some sort of touching as a matter of our circuit precedent? No, Your Honor. By virtue of this Court stating that in remanding the case back down to the trial court level, quote, we do not foreclose the possibility that the complaint could be This Court just addressed whether or not the allegations were sufficient to survive a 12B6 motion. And even shepherdizing the case, the merits as to the Eighth Amendment claim were not fully addressed. As for evolving standards of decency, the Sixth Circuit cases addressing physical contact by a guard were decided as recent as last year. And so there hasn't been such a massive shift in these standards of decency that would require this Court to essentially overrule any prior cases. I'm not sure opposing counsel is arguing that even if there's no case directly on point for us, that the behavior that's present here is so egregious that the constitutional issue is beyond doubt. Would you concede that there could be some behavior committed by, say, a correctional officer that's so egregious that it would be deemed violative of the Eighth Amendment? Absolutely, Your Honor. I'm sure that we could brainstorm a situation where the conduct would be so obvious and egregious that it does violate the Eighth Amendment. That's not the case here, given the numerous hypotheticals that have been thrown out that shows the lack of clearly established law, but also the prior holdings where direct physical contact coupled with sexual degrading comments or sexually suggestive comments does not rise to the level of an Eighth Amendment violation. So I see that my time is up. I ask that this Court reverse the denial of qualified immunity. All right. Thank you very much. And the case is submitted. Let me call the next case. Thank you.